# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00010-CV

**J. Randell Bridges, D.V.M., Appellant**

**v.**

**Texas State Board of Veterinary Medical Examiners and John Helenberg in his
Official Capacity as Executive Director, Appellees[1]**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
### NO. D-1-GN-17-001366, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

J. Randell Bridges, a veterinarian licensed by the Texas State Board of Veterinary
Medical Examiners (the Board), challenges the facial validity and constitutionality of Board Rule
573.22, which establishes a professional standard of care for licensees. *See* 22 Tex. Admin. Code
§ 573.22 (Tex. Bd. of Veterinary Med. Exam'rs, Professional Standard of Care) (Board Rule
573.22); *see also* Tex. Const. art. II, § 1 (separation of powers clause); Tex. Gov't Code § 2001.038
(permitting validity challenge of agency rule). On cross motions for summary judgment, the trial
court denied Bridges's motion, granted the Board's motion,[2] and concluded that Board Rule 573.22

---

[1]  Pursuant to Rule 7.2 of the Texas Rules of Appellate Procedure, the current executive
director John Helenberg, in his official capacity, has been automatically substituted for the former
interim executive director Rudy Calderon, in his official capacity, as an appellee.

[2]  Following the parties' nomenclature, when discussing appellees' actions or filings in court,
we will refer to them collectively as the Board.

"is not contrary to statute or the Texas or United States Constitutions" and "is valid in all respects." For the reasons explained below, we affirm.

## BACKGROUND

While working at the Collin County Emergency Animal Hospital, Bridges performed surgery to remove a fetal puppy, but the puppy did not survive. The dog's owners complained to the Board about the surgery's timeliness. The Board's Enforcement Committee determined Bridges was subject to disciplinary action under section 801.402(6) of the Texas Occupations Code because he violated Board Rule 573.22, one of the Board's rules of professional conduct, which provides:

> Licensees shall exercise the same degree of human care, skill, and diligence in treating patients as are ordinarily used in the same or similar circumstances, including the type of practice, by average members of the veterinary medical profession in good standing in the locality or geographic community in which they practice, or in similar communities.

22 Tex. Admin. Code § 573.22; *see* Tex. Occ. Code § 801.402(6) (subjecting veterinarian to disciplinary action for violating Board's rules of professional conduct). The Committee sent a letter offering to dispose of the matter without formal proceedings if Bridges signed an Agreed Order consisting of findings of fact; conclusions of law, including that Bridges violated Board Rule 573.22; a formal reprimand; and a refund requirement. *See* Tex. Occ. Code §§ 801.401 (authorizing disciplinary action for violation of section 801.402), .451 (authorizing administrative penalty for violation of chapter or rule adopted under chapter). Bridges refused and sued the Board, challenging the validity of Board Rule 573.22 because, in Bridges's view, the Board lacked statutory authority

to enact the rule and the rule violated the Texas Constitution's separation of powers clause. *See* Tex. Gov't Code § 2001.038 (permitting challenge to validity or applicability of agency rules).

Each party filed a traditional motion for summary judgment. *See* Tex. R. Civ. P. 166a. The trial court denied Bridges's motion, granted the Board's motion, and concluded that Board Rule 573.22 "is not contrary to statute or the Texas or United States Constitutions, and is valid in all respects." Bridges now appeals this final summary judgment.

## STANDARD OF REVIEW

We review a trial court's summary judgment de novo. *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017). To obtain traditional summary judgment, a movant must demonstrate that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Id.* (citing Tex. R. Civ. P. 166a(c)). "When both parties move for summary judgment and the trial court grants one motion and denies the other, we review all the summary judgment evidence, determine all of the issues presented, and render the judgment the trial court should have." *Id.* (quoting *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013)).

Here, the summary judgment issues concern a validity challenge, which "tests a rule on procedural and constitutional grounds." *CenterPoint Energy Hous. Elec., LLC v. Public Util. Comm'n*, 354 S.W.3d 899, 902 (Tex. App.—Austin 2011, no pet.). We presume the rule is valid and constitutional, and the challenging party bears the burden of overcoming this presumption. *Texas State Bd. of Exam'rs of Marriage & Family Therapists v. Texas Med. Ass'n*, 511 S.W.3d 28, 33 (Tex. 2017) (noting that rules are presumed valid); *Lunsford v. Board of Nurse Exam'rs*, 648 S.W.2d 391, 396 (Tex. App.—Austin 1983, no writ) (recognizing that rules are presumed

3

constitutional). To meet its burden of demonstrating invalidity, the challenging party "must show that the rule: (1) contravenes specific statutory language, (2) runs counter to the general objectives of the statute, or (3) imposes additional burdens, conditions, or restrictions in excess of or inconsistent with the relevant statutory provisions." *Texas State Bd. of Exam'rs of Marriage & Family Therapists*, 511 S.W.3d at 33; *Texas Ass'n of Acupuncture & Oriental Med. v. Texas Bd. of Chiropractic Exam'rs*, 524 S.W.3d 734, 739 (Tex. App.—Austin 2017, no pet.). The validity of the rule here turns on the construction of the rule and the relevant provisions of the Texas Occupation Code, matters of law that we review de novo. *See Texas Mun. Power Agency v. Public Util. Comm'n*, 253 S.W.3d 184, 192 (Tex. 2007) (noting review of statutory construction is de novo); *Rodriguez v. Service Lloyds Ins. Co.*, 997 S.W.2d 248, 254 (Tex. 1999) (construing agency rules in same manner as statutes).

## DISCUSSION

On appeal, Bridges raises two issues and requests that we reverse the trial court's final summary judgment and render judgment that Board Rule 573.22 is facially invalid, void, and unconstitutional. First, Bridges argues that Board Rule 573.22 is facially invalid because it contravenes specific statutory language, runs counter to the general objectives of the statutes, and imposes additional burdens, conditions, or restrictions in excess of or inconsistent with the relevant statutory provisions. Second, Bridges claims that Board Rule 573.22 violates the separation of powers clause in the Texas Constitution. *See* Tex. Const. art. II, § 1. We consider each issue in turn.

4

**Facial Validity**

In enacting the Veterinary Licensing Act (the Act), which governs the licensing of veterinarians, *see generally* Tex. Occ. Code §§ 801.001–.557, the legislature established the Board and set forth its powers and duties, *see id* §§ 801.051–.164. The Act empowers the Board to adopt "rules as necessary to administer" chapter 801 of the Texas Occupations Code and "rules of professional conduct appropriate to establish and maintain a high standard of integrity, skills, and practice in the veterinary medicine profession," and instructs the Board that it "shall" adopt rules "to protect the public." *Id.* § 801.151(a), (b), (c)(1). As we recently explained, "under the statutory scheme set out by the legislature, the Board has reasonably broad authority to adopt rules establishing standards for conduct of veterinarians." *Lindsey v. Texas State Bd. of Veterinary Med. Exam'rs*, Nos. 03-16-00549-CV, 03-17-00513-CV, 2018 WL 1976577, at *3 (Tex. App.—Austin Apr. 27, 2018, no pet.) (mem. op.).

Relying on this rulemaking authorization statute, *see* Tex. Occ. Code § 801.151, the Board promulgated rules of professional conduct, including Board Rule 573.22 that sets forth the professional standard of care. *See generally* 22 Tex. Admin. Code §§ 573.1–.82 (Tex. Bd. of Veterinary Med. Exam'rs, Rules of Professional Conduct). Both the 2012 adoption and 2015 amendment of Board Rule 573.22 stated that they were under the authority of section 801.151. *See* 37 Tex. Reg. 4229, 4248 (2012); 40 Tex. Reg. 2419, 2419 (2015). But in his opening brief, Bridges neither cites nor discusses section 801.151. And when the Board claimed in response that "[t]he rule derives from the Board's authority to establish professional-conduct standards for veterinarians under section 801.151 of the Veterinary Licensing Act," Bridges neither disputed the

claim nor filed a reply brief. In the summary judgment proceedings below, Bridges briefly discussed section 801.151 in his reply motion, noting that "[t]he fact that Board Rule 573.22 may have been independently authorized by Texas Occupations Code § 801.151 is not dispositive of whether or not Board Rule 573.22 is invalid for contravening or being inconsistent with another statute." But he did not dispute section 801.151's authorization of Board Rule 573.22.

Bridges instead argues that "Board Rule 573.22 is inconsistent with Texas Occupations Code § 801.402 to the extent that Board Rule 573.22 lowers the standard for discipline below the standard already established by statute and renders Texas Occupations Code § 801.402(16) meaningless." The legislature titled section 801.402 "General Grounds for License Denial or Disciplinary Action," and the section enumerates twenty one grounds by which "[a] person is subject to denial of a license or to disciplinary action under Section 801.401." Tex. Occ. Code § 801.402. The Board relied on subsection (6) in disciplining Bridges, which provides that the violation of the Board's rules of professional conduct is a ground for disciplinary action. *Id.* § 801.402(6). However, Bridges instead directs our attention to subsection (16)—a provision that the Board did not rely on in its decision—which states:

> A person is subject to denial of a license or to disciplinary action under Section 801.401 if the person: . . . (16) commits gross malpractice or a pattern of acts that indicate consistent malpractice, negligence, or incompetence in the practice of veterinary medicine or the practice of equine dentistry.

*Id.* § 801.402(16). Bridges argues that Board Rule 573.22 contravenes the language of subsection (16), and therefore the rule is facially invalid. We disagree.

6

As an initial matter, we note that Board Rule 573.22 is titled "Professional Standard of Care" and explicitly establishes the standard of care that applies to licensed veterinaries. *See* 22 Tex. Admin. Code § 573.22 (establishing ordinary care standard). On the other hand, the plain meaning of subsection (16)'s text and section 801.402's title establish that certain types of conduct—e.g., gross malpractice—shall constitute grounds for disciplinary action; subsection (16) does not establish a generally applicable standard of care for veterinarians to the exclusion of other standards of care that the Board may promulgate. *See* Tex. Gov't Code § 311.023(7) (permitting courts to consider "title (caption)" in construing statute); *Willacy Cty. Appraisal Dist. v. Sebastian Cotton & Grain, Ltd.*, 555 S.W.3d 29, 38 (Tex. 2018) ("We rely on the plain meaning of the text as expressing legislative intent unless a different meaning is supplied by legislative definition or is apparent from the context, or the plain meaning leads to absurd results."). If the legislature wanted to mandate a specific standard of care and not merely dictate the type of standard of care that shall constitute disciplinary grounds, it certainly knew how to do so. *See, e.g.*, Tex. Occ. Code § 111.007(a) (setting standard of care for certain health professionals), (b) (mandating that "[a]n agency with regulatory authority over a health professional may not adopt rules . . . that would impose a higher standard of care"). But here it chose not to, and we must presume the legislature did so intentionally. *See Kappus v. Kappus*, 284 S.W.3d 831, 835 (Tex. 2009) ("We presume the Legislature chose its words carefully and intentionally.").

Moreover, we recently addressed and rejected an argument similar to Bridges's. *See Lindsey*, 2018 WL 1976577, at *3–5. There, the Board concluded that Lindsey, in committing animal cruelty, violated subsection (6) of section 801.402 because Lindsey also violated rule 573.4,

7

which prohibits a licensee from violating a state or federal law in connection with the licensee's professional practice but expressly states that "[a] complaint, indictment, or conviction of a law violation is not necessary for the enforcement of this rule." *Id.* at *1, 5 (quoting 22 Tex. Admin. Code § 573.4 (Tex. Bd. of Veterinary Med. Exam'rs, Adherence to the Law), and citing Tex. Occ. Code § 801.402(6)). Lindsey argued that because subsections (5) and (18) of section 801.402 "specify that a veterinarian is subject to discipline if convicted of cruelty to animals, attack on an assistance animal, or any felony," these provisions "preempt any general provisions" that provide for disciplining animal cruelty that did not result in a conviction. *Id.* at *4 (citing Tex. Occ. § 801.402(5), (18)). We rejected Lindsey's argument and held that "the enumeration of certain specific acts in Section 801.402 does not mean that the conduct in this case, an act similar to but not within the exact boundaries of [s]ubsections (5) or (18), cannot be subject to discipline under the more general provision[] of [s]ubsection[] . . . (6)." *Id.* at *5. We also concluded that "the legislature's inclusion of [s]ubsections (5) and (18) was not intended to limit the Board's authority over conduct that may not result in a conviction." *Id.* at *4.

The same is true here. Although the Act dictates that "gross malpractice" and other similar conduct shall serve as a ground for disciplinary action, *see* Tex. Occ. Code § 801.402(16), the Act also authorizes the Board to exercise its discretion to promulgate rules pursuant to section 801.151 and permits a violation of the Board's rules of professional conduct to serve as grounds for disciplinary action, *see id.* §§ 801.151, .402(6). As we noted in *Lindsey*, "[a]llowing the Board to determine by rule, under the authority of [s]ubsection[] . . . (6), that discipline can be brought based on certain conduct that might overlap with conduct" from other subsections "does not render those

[other] subsections [of section 801.402] meaningless." 2018 WL 1976577, at *4. Applying *Lindsey*'s reasoning here, we conclude that subsection (16) demonstrates a legislative intent that conduct falling within the language of that subsection shall be grounds for discipline, while the language of subsection (6) indicates a legislative intent "to allow the Board discretion in deciding to make other similar conduct grounds for disciplinary proceedings," so long as the promulgation of the rule complied with the rulemaking authorization under section 801.151. *See id.* We decline Bridges's invitation to interpret section 801.402(16) as depriving the Board of the discretion to promulgate rules pursuant to its rulemaking authorization statute that may establish a more strict standard of care in its rules of professional conduct. We therefore hold that Board Rule 573.22 does not contravene the specific statutory language of section 801.402(16).

For similar reasons, we also conclude that Bridges failed to meet his burden to establish that Board Rule 573.22 runs counter to the general objectives of the statute. "We discern those 'general objectives' from the plain text of the statutes that grant or limit the agency's authority." *Texas State Bd. of Exam'rs of Marriage & Family Therapists*, 511 S.W.3d at 33 (citing *Pruett v. Harris Cty. Bail Bond Bd.*, 249 S.W.3d 447, 454 (Tex. 2008); *Rodriguez*, 997 S.W.2d at 254). Bridges argues that Board Rule 573.22 is contrary to the general objectives of the statute because section 801.402(6) "is not a sufficient grant of authority to authorize Board Rule 573.22," "it does not authorize the creation of a Board rule," and "the use of § 801.402(6) to validate Board rules would give the Board authority to create any Board rule and discipline licensees under any Board rule." Bridges is correct that section 801.402(6) on its own does not authorize Board Rule 573.22, but he fails to discuss how Board Rule 573.22 is contrary to the objectives addressed in

9

section 801.151, the actual rulemaking authorization statute. *See* Tex. Occ. Code § 801.151. Moreover, the statutory texts of sections 801.151 and 801.402(6) when read together indicate a legislative intent that the Board exercise discretion in promulgating rules of professional conduct, the violation of which constitutes grounds for disciplinary action, to "establish and maintain a high standard of integrity, skills, and practice" and "to protect the public." *Id.* §§ 801.151(b), (c)(1), .402(6); *cf. Lindsey*, 2018 WL 1976577, at *3–5. Bridges's arguments do not show that Board Rule 573.22 is counter to these general statutory objectives.

Finally, we disagree with Bridges's argument that Board Rule 573.22 "imposes additional burdens, conditions, or restrictions in excess of or inconsistent with the relevant statutory provisions." Bridges repeats his argument that Board Rule 573.22 imposes a higher burden on veterinarians than does section 801.402(16), stating that "Board Rule 573.22 lowers the standard for discipline below the standard already established by statute." But Bridges looks to the wrong statute in his analysis. As has already been shown, section 801.402(16) does not establish a standard of care to the exclusion of other standards of care that the Board may promulgate, and Board Rule 573.22 does not contravene section 801.402(16). The "relevant statutory provisions" here are the rulemaking authorization provision, Tex. Occ. Code § 801.151, and the provision providing that a violation of the Board's professional rules of conduct constitutes a ground for disciplinary action, *id.* § 801.402(6). Because Bridges has not demonstrated how Board Rule 573.22 "imposes additional burdens, conditions, or restrictions in excess of or inconsistent" with these relevant provisions, Bridges has failed to meet his burden of demonstrating the invalidity of the rule.

Accordingly, we overrule Bridges's first issue and turn now to the issue of constitutional validity.

**Constitutional Validity**

In his second issue, Bridges largely repeats his arguments regarding Board Rule 573.22's invalidity, but frames his argument in the context of the Texas Constitution's separation of powers clause. *See* Tex. Const. art. II, § 1. This clause provides that none of the three branches of the government "shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted." *Id.*

Bridges argues that in adopting Board Rule 573.22, "the Board [an executive agency] assumed a power more properly attached to the Legislature, usurping the Legislature's constitutionally delegated power" and that "the Board lacked the specific or implied authority to enact Rule 573.22 in contravention of Texas Occupations Code § 801.402." We have already concluded above that Board Rule 573.22 does not contravene section 801.402. Moreover, it is established law that "the Texas Legislature may delegate its powers to agencies established to carry out legislative purposes, as long as it establishes 'reasonable standards to guide the entity to which the powers are delegated.'" *Edgewood Indep. Sch. Dist. v. Meno*, 917 S.W.2d 717, 740 (Tex. 1995) (quoting *Railroad Comm'n v. Lone Star Gas Co.*, 844 S.W.2d 679, 689 (Tex. 1992)). As we have discussed, the legislature delegated to the Board rulemaking powers and established standards to guide the Board in exercising its rulemaking powers. *See* Tex. Occ. Code § 801.151. Bridges does not argue that the legislature enunciated standards in section 801.151 that are unreasonable. And by failing to discuss section 801.151 or the Board's conduct in light of that section, Bridges has not met

11

his burden of showing how the Board "[u]surp[ed] the Legislature's constitutionally delegated power" or lacked the "authority to enact Rule 573.22." We therefore overrule Bridges's second issue.

## CONCLUSION

Having overruled Bridges's issues, we affirm the trial court's final summary judgment, which denies Bridges's motion for summary judgment and grants the Board's motion.

_____
Melissa Goodwin, Justice

Before Chief Justice Rose, Justices Goodwin and Kelly

Affirmed

Filed:   February 15, 2019